388 So.2d 776 (1980)
STATE of Louisiana
v.
Henry A. REED.
No. 66576.
Supreme Court of Louisiana.
September 3, 1980.
Dissenting Opinion September 24, 1980.
*777 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Julie C. LeBlanc, Asst. Dist. Atty., for plaintiff-appellee.
Milton P. Masinter, New Orleans, for defendant-appellant.
BLANCHE, Justice.
A jury convicted defendant of possession of a firearm by a convicted felon in violation of R.S. 14:95.1. Subsequently, defendant was sentenced to three years at hard labor. On appeal, defendant raises five assignments of error. We address in this opinion only assignment of error number one, dealing with the trial judge's denial of defendant's motion to suppress the introduction of the firearm in evidence, as meriting discussion. For the benefit of the parties, we attach hereto an appendix containing a discussion of the remaining assignments which we designate as "Not for Publication".
On April 19, 1978, two New Orleans Police officers, on routine traffic patrol, noticed an expired brake tag on a car being driven by defendant. The officers stopped the vehicle and proceeded to investigate the traffic violation. Officer Rauch approached the driver's side of the car, while the other officer, because the car contained a passenger, approached the passenger side. Both defendant and the passenger were asked to step out of the car.
As defendant was exiting the vehicle, Officer Rauch spotted on the front seat a pistol with the barrel stuck into the crack of the seat. The officer then ordered defendant and the passenger to the rear of the car and removed the pistol, a .32 caliber revolver loaded with five rounds of ammunition. When Officer Rauch asked defendant if he had ever been arrested before, defendant replied that he was on probation for sale of heroin. Following a determination that defendant was a convicted felon, the officers placed him under arrest on the charge of possession of a firearm by a convicted felon. The defendant's passenger was allowed to drive the car away.
Defendant contends the firearm was seized in violation of his Fourth Amendment rights. Both the United States and Louisiana Constitutions prohibit unreasonable searches and seizures. U.S.Const. Amend. 4; La.Const. art. 1, § 5. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that, following a lawful investigatory stop, police officers, under certain circumstances, may constitutionally conduct limited searches without a warrant for weapons. (See also Adams v. Williams, 407 U.S. 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).) In that case, an officer conducted a "pat-down" of the person's clothing. In holding the search reasonable, the Court stated:
"... where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he [the officer] is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." [citations omitted] Terry, supra, 88 S.Ct. at 1884-5.
The opinion emphasizes that the sole justification for such a search was the safety of the officer and others and, consequently, the scope of the search must be limited to the discovery of weapons.
*778 The central inquiry on governmental invasion of a citizen's constitutionally protected right of privacy and personal security is to determine its reasonableness under all of the circumstances. Pennsylvania v. Mimms, 434 U.S. 107, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); Terry v. Ohio, supra. We decide the instant case on this basis.
First, we decide that the officers were in a place where they had a right to be when they stopped defendant's automobile. Reasonable cause for the stop was furnished by the traffic violation. Thereafter, the officers were confronted with a situation in which two individuals stood within possible reach of a dangerous weapon which was easily accessible and in open view on the front seat of the car. Although it is arguable that defendant was in custody, the officers had no reason to arrest the passenger. The exposed weapon was a source of potential danger to the officers' safety, just as contemplated in Terry v. Ohio, supra, when a search of one's person was permitted.
Under these circumstances, it seems reasonable for the officers to take temporary custody of the weapon for their own protection during the course of the investigation. As was stated in Terry, "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Consequently, we hold the seizure of the weapon from defendant's car was not in violation of defendant's constitutional rights, and the weapon may properly be introduced in evidence against him.
In State v. Blanchard, 374 So.2d 1248 (La.1979), police officers stopped defendant's car because of a traffic violation. Defendant existed the car, closed the car door, and approached the officers. Defendant was the only occupant. Because one officer had seen defendant hurriedly put something, which he thought might be a weapon, under the seat, officers searched the car and found cocaine beneath the seat. In suppressing the evidence, we said that "to suggest that defendant could have dived through the window of his car and seized a weapon from under his seat, under these circumstances is unreasonable." The case is distinguishable on its facts because, unlike the instant case, the area searched was not within defendant's immediate control. In addition, the officers in Blanchard were not confronted with two individuals, but with one, nor with a weapon in plain view.
For these reasons, the conviction of the defendant is affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, Justice, concurring.
The seizure in this case occurred in two phases, the first for the purpose of self-protection and the second for the purpose of securing evidence of a crime. Each phase must be viewed separately in order to determine whether the seizure was reasonable (and therefore constitutional) under the circumstances.
The police officer inadvertently discovered the gun in the course of investigating a routine traffic offense, and he reasonably seized or took temporary possession of the gun in order to protect himself for the duration of the investigation. Although defendant was outside the car when the officer discovered the gun, a passenger was still in the car. See State v. Williams, 366 So.2d 1369 (La.1978). But even if both persons were out of the car before the gun was inadvertently discovered (and there was arguably less danger to the officers), it was nevertheless reasonable for the officer to take temporary possession of the gun, located only a few feet away from these persons. Many police officers have been shot as a consequence of traffic stops. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). This Court should view the taking of temporary possession of the weapon as a minimal intrusion dictated and *779 justified by the officer's interest in self-protection.[1]
The second phase of the seizure occurred after the officer sighted and took possession of the gun, when inquiry revealed that defendant was a convicted felon. At that point the officer was certainly aware that the gun had possible evidentiary significance and reasonably retained it for that purpose.
DENNIS, Justice, dissenting.
I respectfully dissent, disagreeing slightly with the majority's interpretation of the evidence and completely with its legal conclusions.
On the evening of April 19, 1978, two New Orleans police officers on routine traffic patrol spotted the defendant and a companion driving in a car with an expired brake tag. Pursuant to routine procedures, the officers flashed their lights and pulled the defendant's vehicle over to the shoulder of the road and stepped out to investigate the traffic violation. Officer Rauch approached the defendant on the driver's side of the car. He asked the defendant to get out of the car and surrender his driver's license. At the same time, Officer Fanguy went to the passenger's side and requested the defendant's female companion to exit the vehicle.
As the defendant moved toward the rear of the vehicle without resistance, Officer Rauch peered into the driver's window with his flashlight and noticed a pistol lying on the front seat, partially stuck in the crack of the seat near the woman's purse. He told the defendant and the woman to step completely to the rear of the car, then looked through the car to determine if any other weapons were there. Finding none, the officer reached into the car and seized the gun. He asked the defendant if he had ever been arrested; the defendant replied that he was on probation for the sale of heroin. Officer Rauch then went to the police car to check the gun registration, defendant's identification and his police record. He discovered that the gun was not stolen, but that the defendant had a prior conviction for distribution of heroin.
The defendant was arrested for possession of a firearm by a convicted felon and taken into custody. His companion was allowed to drive the defendant's car away. On November 22, 1978, the defendant was convicted and given a three-year prison term.
The Fourth Amendment and the Louisiana Constitution Art. 1, § 5, prohibit unreasonable searches and seizures. Warrantless searches and seizures are per se unreasonable absent compliance with one of the specifically defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Banks, 363 So.2d 491 (La. 1978); State v. Fearn, 345 So.2d 468 (La. 1977). The state has the burden of showing that a warrantless search was justified under one of the exceptions. State v. Banks, supra; State v. Braud, 357 So.2d 545 (La. 1978). Here, the state relies upon the plain view doctrine to legitimate this search and seizure.
We have stated that police may seize items in plain view where it is impractical to obtain a search warrant, but in order for the seizure to pass constitutional muster three conditions must be satisfied: (1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Banks, supra, at 493; State v. Parker, 355 So.2d 900 (La.1978). The plain view doctrine *780 may not, however, become a vehicle by which the police engage in a "general exploratory search." Coolidge v. New Hampshire, supra, 91 S.Ct. at 2038.
The critical element in this formulation of the plain view exception to the warrant requirement is that the officer must know at the time he seizes the object that it is "evidence or contraband." Without this condition, a police officer would be able to seize any object in his view in order to determine if it could be incriminating; thus, intrusions into constitutionally protected areas without a search warrant would be encouraged. It must, therefore, be apparent before the seizure that the object is evidence or contraband. State v. Meichel, 290 So.2d 878 (La.1974). Only with this key condition can the "plain view" exception be narrowly delineated so as to prevent general exploratory searches repugnant to the constitution.
We have approved seizures of evidence in situations similar to this, where all the conditions of the plain view doctrine have been met. For example, in State v. Braud, supra, the police stopped the defendant for driving a vehicle with an expired brake tag. When the police approached the defendant's car, they noticed loose marijuana in plain view on the front seat. The officers seized the marijuana and an unmarked pill bottle situated next to the marijuana. We upheld the seizure of both items because, in addition to the satisfaction of the first two conditions of the plain view exception, the items clearly appeared to be contraband. On the other hand, where it was clear that the officer could not have known the object seized was contraband when it was within his "plain view," we have overturned the seizure. See State v. Meichel, supra.
The state has failed to show that the third condition is met in this case. When Officer Rauch discovered the pistol, he had no reasonable suspicion that it had evidentiary significance. The defendant was stopped only for a routine traffic violation, driving with an expired brake tag. He peaceably got out of his car and walked toward the rear while the officer flashed his light through the driver's window and discovered the pistol lying on the front seat. After looking through the rest of the car, Officer Rauch reached in and took the pistol. At this point, the pistol was not known to the officer to be "evidence or contraband," because merely having a pistol on the seat of one's car does not violate any criminal statute in Louisiana. See State v. Blanchard, 374 So.2d 1248 (La.1979). Only after the seizure did the officer learn of the defendant's status as a convicted felon for whom it was a criminal offense to possess a firearm. The search and seizure of the pistol, therefore, cannot be justified by the plain view doctrine.
The state asserts, in the alternative, that this search and seizure may be justified as necessary to protect the police officers from bodily harm while they investigated the traffic offense. Whether we view this argument in terms of a search incident to a lawful arrest (although it is doubtful the defendant was under arrest at the time of the seizure), or from the vantage point of a limited search for weapons in protection of the police officers during an investigatory stop, the state's position is untenable.
A search incident to a lawful arrest is limited to a search of the defendant's person and the area within his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Blanchard, supra. Even without an arrest, officers may conduct a limited search for weapons during a lawful investigatory stop, where such a search is necessary to neutralize the threat of physical harm. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Both exceptions to the warrant requirement of our constitutions depend upon the officer's reasonable belief that the defendant is in a position to reach for the weapon. If the weapon is not within the defendant's immediate control and the defendant is otherwise securely within the custody of the officers, the police may not make a warrantless search and seizure.
The facts in this case indicate that the defendant and his passenger, at the time Officer Rauch seized the pistol, were in no *781 position to threaten the officers. They were too far away from the pistol to be able to reach in and grab it. Both suspects were out of the car and walking toward the rear while within the close company of the two policemen. Officer Rauch spotted the pistol and further ordered the defendant and the passenger to get behind the car. Then he seized the weapon. At the time of the seizure, the pistol was not in the immediate control of either the defendant or his passenger so as to create a reasonable fear in Officer Rauch that the pistol posed a danger to the officers.
Since the seizure of the pistol cannot be justified under any recognized exception to the warrant requirement of our constitutions, the failure to hold that the pistol was inadmissible as evidence at the defendant's trial was clearly reversible error.
NOTES
[1] Whether the officer's interest in safety is enhanced by the driver's and passenger's being required to get out of the vehicle is not an issue here. See State v. Williams, above. The issue is the reasonableness of the officer's decision not to allow an apparently workable firearm to remain available to be used to assault him while he investigates a routine traffic matter. The officer's interest in his own safety far outweighs the citizen's minimal interest in not having his firearm held by an officer for the brief period required to complete the traffic investigation.