359 So.2d 133 (1978)
STATE of Louisiana
v.
Gordon T. SCHMIDT.
No. 61214.
Supreme Court of Louisiana.
May 22, 1978.
*134 Alfred B. Shapiro, Gravel, Roy & Burnes, Alexandria, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Polk Culpepper, Asst. Dist. Atty., for plaintiff-respondent.
MARCUS, Justice.
Gordon T. Schmidt was charged by bill of information with possession of a controlled dangerous substance, to-wit: marijuana, in violation of La.R.S. 40:966. After trial by a judge, he was found guilty as charged and sentenced to serve five months in the parish prison and to pay a fine of $350 plus court costs, or in default thereof, to serve thirty days in the parish prison. Execution of the prison sentence was suspended and defendant was placed on supervised probation for a period of one year. Defendant's application to this court for review under our supervisory jurisdiction was granted.[1] He asserts one assignment of error for reversal of his conviction and sentence.
Defendant contends the trial judge erred in denying his motion to suppress physical evidence. He argues that the evidence was seized as a result of an unconstitutional search of an automobile.
A pretrial hearing was held on the motion to suppress evidence. The sole witness to testify at this hearing was Officer Mark Baden, a deputy sheriff for Rapides Parish, who was called by defendant. His testimony reflects the following circumstances surrounding the search of the automobile and the seizure of the evidence at issue.[2]
At about 2:30 a. m. on August 11,1977, in Rapides Parish, Deputy Baden, accompanied by Deputy Tim Ledet, observed a Chevrolet Camaro speeding and being driven recklessly. They pursued the vehicle which they clocked at a speed in excess of 90 miles per hour. The deputies, unable to overtake the Camaro with their vehicle, summoned assistance from both the Alexandria City Police and the Louisiana State Police who, having more powerful automobiles, were eventually able to force the Camaro off the road onto the grounds of Central Louisiana Hospital in Pineville. Deputies Baden and Ledet joined the other officers immediately thereafter. The occupants of the Camaro were Terrell White, the driver; David Holley, a front-seat passenger; and defendant, who occupied the right rear seat. Deputy Baden approached the Camaro and asked White to exit the vehicle and step to the rear. In doing so, White staggered; he smelled of alcohol. Deputy Baden placed him under arrest. The officers then asked Holley and defendant to exit the Camaro and step to the rear. Officer Baden stated that he smelled an odor of what he thought to be marijuana smoke after the occupants had been removed from the vehicle. When asked what action he took next, Deputy Baden replied, "[A]fter an arrest is made, we inventory the vehicle." No search warrant had been *135 obtained. Before entering the car itself and with the aid of a flashlight, he checked the Camaro for anything that might harm him. (The three occupants of the Camaro were located outside and to the rear of the vehicle; hence, they were not in a position to reach inside the vehicle for a weapon.) He saw a plastic bag, containing what appeared to be marijuana, partially beneath a rear floor mat. Deputy Baden testified that this check was made "in the process of inventorying the vehicle," although made prior to entering the Camaro to conduct a complete search. The inventory search and a form listing the items found in the Camaro were eventually completed. However, Deputy Baden admitted that he did not ask White for consent to search the vehicle, nor if there were any valuables in the Camaro. He further testified that he had not summoned a tow truck before beginning the search, nor did he attempt to ascertain ownership of the Camaro prior thereto.
Through the testimony of Deputy Baden at the hearing on the motion to suppress evidence, defendant made an initial showing that a warrantless search and seizure occurred. Hence, the burden of proof shifted to the state to affirmatively show that the search and seizure were justified under one of the well-recognized exceptions to the warrant requirement of the fourth amendment to the federal constitution. State v. Braud, 357 So.2d 545 (La. 1978); State v. Franklin, 353 So.2d 1315 (La.1977). The state does not contend, nor do we find, that the search and seizure were justified under the exceptions of consent, probable cause plus exigent circumstances, or search incident to a lawful arrest. Rather, the state argues that the seizure of the marijuana was justified under the "plain view" exception to the warrant requirement or, alternatively, that the evidence was seized pursuant to a valid inventory search. We do not agree.
It is well settled that objects falling within the plain view of an officer who had a right to be in a position to have that view are subject to seizure and may be introduced in evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Williams, 349 So.2d 286 (La.1977); State v. Dixon, 337 So.2d 1165 (La.1976); State v. Rogers, 324 So.2d 403 (La.1975); State v. Jefferson, 284 So.2d 882 (La.1973). In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court explained the circumstances under which the "plain view" doctrine is of significance:
It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the `plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.
. . . . . .
What the `plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification whether it be a warrant for another object, hot pursuit, search incident to [a] lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accusedand permits the warrantless seizure.
Under the facts of the instant case, we do not find that the police officer had a legitimate reason to flash his light into the automobile. The facts indicate that the compact automobile had been stopped for traffic violations. The car was located on the grounds of a state hospital and was surrounded by a number of police officers. The driver and two passengers had been removed from the vehicle. Clearly, the subsequent flashlight check (intrusion) by Deputy Baden into the vehicle (protected area) was not done to determine if some person *136 who might have harmed him was concealed in the automobile. Rather, we find that the flashlight check was done either as a prelude to or as part of the inventory search of the car. Hence, the validity of the seizure depends upon the justification for the initial intrusion, i. e., the inventory search exception to the warrant requirement.
In South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court upheld police intrusions into automobiles impounded or otherwise in lawful custody where the process was aimed at securing or protecting the car and its contents. In that case, the car had been impounded and the search was made pursuant to standard police procedures which had as their purpose the inventorying and safeguarding of the vehicle's contents. The conduct of the police was held not "unreasonable" under the fourth amendment. In State v. Jewell, 338 So.2d 633 (La.1976), following the reasoning of Opperman, we held that true inventory searches of motor vehicles impounded for reasonable cause do not offend the prohibition of article 1, section 5 of our state constitution against unreasonable governmental searches, seizures, or invasions of privacy. However, in Jewell and other more recent cases, we found that the facts in each case did not support the conclusion that the police officer was conducting a search to safeguard the vehicle's content, as contrasted with making a warrantless search for incriminating evidence, without probable cause to do so. The searches in these cases were held unreasonable and therefore unconstitutional. We reached these conclusions because of the presence of various factors indicating that the purported inventory searches were not reasonably restricted in scope so as to constitute true inventory searches. At least five such factors are present in the instant case: (1) failure to ask for consent to search; (2) failure to inquire whether other arrangements could be made for the vehicle, especially if the vehicle contained a competent passenger as well as the driver; (3) failure to call a tow truck prior to commencement of the search; (4) conducting the search at the site of the arrest rather than at the place of storage; (5) failure to ask the vehicle's custodian whether it contained any valuables. See State v. Gaut, 357 So.2d 513 (La.1978); State v. Rome, 354 So.2d 504 (La.1978); State v. Jewell, supra.
Accordingly, we conclude that the search in the instant case was not reasonably restricted in scope so as to constitute a true inventory search. The seizure of the marijuana was not justified under the inventory search exception to the warrant requirement.
In sum, the state failed to meet its burden of showing that the search and seizure were justified under one of the well-recognized exceptions to the warrant requirement of the fourth amendment. Hence, the search and seizure of the marijuana were unconstitutional; the trial judge committed reversible error in denying defendant's motion to suppress the evidence.

DECREE
For the reasons assigned, the conviction and sentence are reversed, and the case is remanded for a new trial consistent with law and the views herein expressed.
SANDERS, C. J., and SUMMERS, J., dissent.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I join in the majority opinion and fully concur with its holding. However, I disagree with the statements contained in footnote 2 insofar as they imply that this Court will always consider the State's evidence at trial in determining whether the ruling on a pretrial motion to suppress was correct. In a proper case, if justice requires, this Court has and should review the trial court's ruling solely on the basis of evidence submitted to it for the purpose in advance of the trial on the merits. State v. Welch, 337 So.2d 1114 (La.1976).
NOTES
[1] 353 So.2d 1044 (La.1978).
[2] In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Stewart, 357 So.2d 1111 (La.1978); State v. Shivers, 346 So.2d 657 (La.1977); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967). We have reviewed the pertinent evidence given at the trial of the instant case. This evidence presents substantially the same facts and circumstances surrounding the search and seizure at issue as was indicated by the testimony of Deputy Baden at the hearing on the motion to suppress. Since the evidence adduced at the trial does not affect the result we reach in the instant case, our relation of the pertinent facts is based only upon the testimony given at the suppression hearing.