

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 KA 0658

### STATE OF LOUISIANA

### VERSUS

### ALEXIS MICHELLE ZEBLEY

Judgment Rendered: **FEB 2 8 2025**

\* \* \* \* \* \*

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of Washington
State of Louisiana
Docket No. 21-CR7-147368

Honorable Alan A. Zaunbrecher, Judge Presiding

\* \* \* \* \* \*

J. Collin Sims
District Attorney
 -and-
Matthew Caplan
Assistant District Attorney
Covington, Louisiana
 -and-
Jason Cuccia
Assistant District Attorney
Franklinton, Louisiana

Counsel for Appellee
State of Louisiana


Christopher Aberle
Mandeville, Louisiana

Counsel for Defendant/Appellant
Alexis Michelle Zebley

\* \* \* \* \* \*

**BEFORE:  McCLENDON, C.J., LANIER AND BALFOUR, JJ.**

**McCLENDON, C.J.**

The defendant, Alexis Zebley, was charged by bill of information with possession of a schedule two controlled dangerous substance, methamphetamine, less than two grams, and possession of cocaine, less than two grams, violations of LSA-R.S. 40:967(C)(1), and initially pled not guilty. The defendant filed a motion to suppress, which the trial court denied. The defendant subsequently withdrew her not guilty plea and pled guilty as charged pursuant to **State v. Crosby**, 338 So.2d 584 (La. 1976) reserving her right to seek review of the denial of the motion to suppress. The trial court deferred imposition of sentence and placed the defendant on supervised probation for two years, to run concurrently. The defendant now appeals, challenging the trial court's denial of her motion to suppress. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 14, 2021, Officer Jonathan Leche, a uniform patrol officer with the Franklinton Police Department, initiated a traffic stop after observing a vehicle stopped in the roadway and after verifying the registration was outdated and the vehicle lacked insurance. Officer Leche instructed the driver, Peyton Cassidy, to exit the vehicle. When he refused, Officer Leche removed Cassidy from the vehicle, revealing a large, sharp-bladed weapon next to the console in the seat.[1] Cassidy gave Officer Leche permission to search the vehicle; however, the vehicle was owned by the defendant, seated on the passenger side, who told Officer Leche he did not have consent to search the vehicle. Officer Leche informed the defendant that the vehicle would be towed because it could not be driven without current registration and compulsory liability insurance. He called for a tow truck, and proceeded to conduct an inventory search. He found a backpack belonging to the defendant on the passenger side. He then proceeded to open the backpack and found drugs and drug paraphernalia. The defendant was subsequently arrested.

---

[1] A warrant's check indicated that a warrant had been issued in Arkansas for Cassidy's arrest. Officer Leche was able to verify that Arkansas did not want to extradite Cassidy.

## ASSIGNMENT OF ERROR

On appeal, in her sole assignment of error, the defendant argues that the trial court erred in denying her motion to suppress evidence seized during the inventory search. The defendant argues that the inventory search was a pretext to search the vehicle for contraband or evidence of a crime.

## DISCUSSION

The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protects people against unreasonable searches and seizures. **State v. Parker**, 2023-0941 (La.App. 1 Cir. 6/27/24), 392 So.3d 652, 656. A search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. **Coolidge v. New Hampshire**, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); **State v. Thompson**, 2002-0333 (La. 4/9/03), 842 So.2d 330, 335. The inventory search has been recognized as one of the narrowly drawn exceptions. See **State v. Warren**, 2005-2248 (La. 2/22/07), 949 So.2d 1215, 1225-26, citing **State v. LaRue**, 368 So.2d 1048 (La. 1979). In this case, the State posits that the search conducted of the defendant's vehicle was a standard inventory search, since the vehicle could not be driven and had to be towed.

Several factors are considered in determining whether a legal inventory search has been conducted: (1) the vehicle could not have remained safely at or near the place it was stopped; (2) the search was not conducted in the field; (3) the tow truck was called before the search commenced; (4) formal impoundment procedures were followed; (5) the vehicle operator was asked if he consented to a search, if the vehicle contained valuables, or if he would consent to the agency's failure to afford him the protection of an inventory search; (6) arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him. **State v. Escoto**, 2009-2581 (La. 7/6/10), 41 So.3d 1160, 1163; **State v. Sims**, 426 So.2d 148, 153 (La. 1983), citing **State v. Hardy**, 384 So.2d 432 (La. 1980); **State v. Killcrease**, 379 So.2d 737 (La. 1980); **LaRue**, 368 So.2d 1048.

3

The defendant attacks the validity of the inventory search on several fronts. First, the defendant argues that the inventory search was "subterfuge for rummaging through a vehicle without a warrant for the primary purpose of seizing evidence." She further argues that the vehicle could have remained safely at or near the place where it was parked on the side of the road forgoing the need to do an inventory search. She alleges that she was not asked or made aware that she could personally arrange to have the vehicle towed. Further, she contends that she did not consent to the search, and she argues that there was no written policy provided by Officer Leche outlining the formal procedure for an inventory search. However, the defendant admits that the search was conducted in the field and a tow truck was called before the search.

A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. **State v. Jarrell**, 2007-1720 (La.App. 1 Cir. 9/12/08), 994 So.2d 620, 625. When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion. See **State v. St. Cyre**, 2019-0034 (La.App. 1 Cir. 12/19/19), 292 So.3d 88, 96 writ denied, 2020-00142 (La. 5/26/20), 296 So.3d 1063. However, a trial court's legal findings are subject to a *de novo* standard of review. **State v. Hunt**, 2009-1589 (La. 12/1/09), 25 So.3d 746, 751. In determining whether the ruling on a motion to suppress was correct, this court is not limited to the evidence adduced at the hearing on the motion. **State v. Jefferson**, 2018-0083 (La.App. 1 Cir. 9/24/18), 261 So.3d 793, 799, writ denied, 2018-1671 (La. 2/25/19), 266 So.3d 294. Pursuant to Louisiana Code of Criminal Procedure article 703(D), the State bears the burden of proving the admissibility of evidence seized without a warrant when the defendant files a motion to suppress. Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the State to prove the admissibility of any evidence seized without a warrant. **Parker**, 392 So.3d at 657.

The State relies on **Escoto**, 41 So.3d at 1161, where officers initiated a traffic stop of a vehicle and the driver, Escoto, was unable to provide a valid United States driver's license. Thereafter, the officers arrested the defendant for operating a motor vehicle in

the United States without lawful presence in violation of LSA-R.S. 14:100.13. The vehicle was parked near the shoulder of Highway 190 near the start of a turning lane into Covington High. **Id.** at 1162. Officers asked the defendant if he had a cell phone or a way to call someone to pick up his vehicle in which he responded he did not have a cell or anyone to retrieve or move his vehicle. **Id.** After determining the vehicle could not safely remain in its location, the officers called the dispatcher for a tow truck. Thereafter, the officers conducted an inventory search of the vehicle. **Id.**

**Escoto** outlined that courts "consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the vehicle and its contents." **Escoto**, 41 So.3d at 1163, citing **South Dakota v. Opperman**, 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976). Further in **Escoto**, the court recognized that one purpose of the inventory procedure is to protect police from potential danger. The court recognized these inventory procedures developed in response to three distinct needs, "the protection of the owner's property while it remains in police custody, the protection [sic] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." **Escoto**, 41 So.3d at 1163. Here, the trial court found that this was a valid inventory search.

Under the factual circumstances presented, Officer Leche made a valid traffic stop of the defendant's vehicle. Admittedly, the vehicle was parked on the side of the road and was not a security issue. However, once the impoundment of the vehicle was deemed reasonable and necessary, as mandated by LSA-R.S. 32:863.1(C)(1)(a),[2] an inventory search was required. An essential requirement to a valid inventory search is that the police "must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search." **Escoto**, 41 So.3d at 1163, citing **State v. Jewell**, 338 So.2d 633, 638 (La. 1976). The good-faith inventory search revealed a backpack on the passenger side. The officer permissibly

---

[2] Louisiana Revised Statutes 32:863.1(C)(1)(a) provides in pertinent part, "If the operator of a motor vehicle is unable to show compliance with the provisions of this Part by displaying the required document when requested to do so, the motor vehicle shall be impounded and the operator shall be issued a notice of noncompliance with the provisions of this Part on a physical or electronic form provided by the department."

5

opened the backpack where it was discovered that it contained illegal contents, and an arrest was made. See **Colorado v. Bertine**, 479 U.S. 367, 369, 107 S.Ct. 738, 740, 93 L.Ed.2d 739 (1987).[3]

Although the defendant's vehicle was parked on the side of the road and did not pose a hazard due to its status as uninsured and unregistered, the vehicle could not be legally driven by anyone. This argument is without merit.

The defendant also argues that she did not give her consent to search the vehicle; however, under the inventory search exception, the officer was not required to obtain the defendant's consent to inventory the contents of the vehicle. Cf. **Jewell**, 338 So.2d at 637 (noting "in the absence of clear showing of a true inventory search, the Fourth Amendment does not permit a warrantless search of an automobile without probable cause or without the consent of its custodian."). This argument is without merit.

Furthermore, while evidence of a written formal impoundment procedure was not introduced, it was not necessary given Officer Leche's testimony. Testimony regarding reliance on standardized procedures has been deemed sufficient. See **United States v. Como**, 53 F.3d 87, 92 (5 Cir. 1995), cert. denied, 516 U.S. 1049, 116 S.Ct. 714, 133 L.Ed.2d 668 (1996), citing **United States v. Skillern**, 947 F.2d 1268, 1275 (5 Cir. 1991), cert. denied, 503 U.S. 949, 112 S.Ct. 1509, 117 L.Ed.2d 646 (1992). Here, the following testimony was elicited:

> [Officer Leche:] I [] notified them that their vehicle was going to be towed due to the vehicle not being registered, not having insurance, then I would conduct a vehicle inventory per policy.

---

[3] In **Colorado v. Bertine**, 479 U.S. 367 (1987), the supreme court considered whether, and under what circumstances, police may inventory the contents of closed containers found in vehicles lawfully taken into their custody. During the inventory search of Bertine's impounded vehicle, an investigating officer opened a closed backpack, a nylon bag within the backpack, and closed metal canisters located inside the nylon bag. **Id.** at 369. The officer found controlled substances, cocaine paraphernalia, and a large amount of cash in the canisters. **Id.** Reversing suppression of this evidence, the court acknowledged that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment[.]" **Id.** at 374. The court rejected the suggestion that police, before inventorying a container, "weigh the strength of the individual's privacy interest in the container against the possibility that the container might serve as a repository for dangerous or valuable items." **Id.** Rather, the court observed, "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the circumstances they confront." **Id.** at 375. The **Bertine** court added that nothing in its jurisprudence "prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of criminal activity." **Id.** at 375. The court held that there was no showing that the inventory search was "for the sole purpose of investigation." **Id.** at 372. Further, the court noted that standard procedures governed the inventory search and that those procedures "mandated the opening of closed containers and the listing of their contents." **Id.** at 374, n.6. Accordingly, the court held that the Fourth Amendment did not prohibit use of the evidence found during the inventory search of Bertine's vehicle.

[The State:] And what is the Franklinton PD's policy as far as vehicle inventory searches?

[Officer Leche:] That everything inside that vehicle must be completely searched and gone through, whether it be closed compartments or bags or personal items in there.

Officer Leche outlined the department's protocol and the trial court found it to be sufficient. Accordingly, defendant's argument that the State was required to introduce a written policy outlining the formal procedure for an inventory search is without merit.

We find no error in the trial court's denial of the defendant's motion to suppress as the warrantless seizure of drugs occurred during a proper inventory search. Accordingly, the defendant's lone assignment of error is without merit.

## PATENT ERROR

Louisiana Code of Criminal Procedure article 930.8(C) provides that, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. The prescriptive period for filing an application for post-conviction relief is two years after the judgment of conviction and sentence become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See LSA-C.Cr.P. art. 930.8(A); **State v. LeBoeuf**, 2006-0153 (La.App. 1 Cir. 9/15/06), 943 So.2d 1134, 1142, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158.

The transcript reflects that after the trial court imposed the defendant's sentences, it advised the defendant that she had the "[s]ame general and special terms and conditions that I explained before and the same two years to file for any post conviction relief." In this regard, the trial court was apparently referencing its statement made to a different defendant.[4] However, the trial court failed to specifically advise the defendant of the prescriptive period for applying for post-conviction relief.

Nevertheless, the trial court's failure to accurately advise the defendant of the prescriptive period has no bearing on the sentences and is not grounds to reverse the sentences or remand for resentencing. However, out of an abundance of caution and in the interest of judicial economy, we advise the defendant LSA-C.Cr.P. art. 930.8 generally

---

[4] At the same hearing, the trial court, in sentencing a different defendant, told that defendant: "[A]nd the Court further wishes to remind you you have two years from the date your sentence becomes final to file for any post conviction relief."

7

provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. art. 914 or 922. **LeBoeuf**, 943 So.2d at 1143.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions and sentences.

**AFFIRMED.**